UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS E. DeMARCO, | ) | Case No. 4:17CV1376 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |

Plaintiff Thomas DeMarco[1] ("DeMarco" or "claimant") has challenged the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be remanded.

I.  PROCEDURAL HISTORY

On April 22, 2014, the claimant protectively filed an application for DIB, alleging disability beginning November 7, 2013.  (R. 11, PageID #: 250-251, 282-295.)  The claimant's application was denied initially and upon reconsideration.  *Id.* at 144-156, 157-188.  Thereafter,

---

[1] Claimant's name frequently appears in the record as DEMARCO or Demarco.  Claimant testified that the correct spelling is DeMarco.  *See, e.g.*, R. 11, PageID #: 68, 98.

the claimant filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 205-206. The ALJ held a hearing on March 10, 2016. (R. 11, PageID #: 92-143.) Claimant appeared at the hearing, was represented by counsel, and testified. (*Id.* at 94, 98-129.) A vocational expert ("VE") attended the hearing and provided testimony. *Id.* at 94, 129-141. As the hearing closed, the ALJ stated that he would consider a post-hearing brief. *Id.* at 142-143.

Counsel for DeMarco submitted a post-hearing brief dated March 17, 2016, which argued that the the ALJ should disregard the VE's hearing testimony concerning claimant's transferable skills in the budgeting and forecasting areas. (R. 11, PageID #: 376.) Claimant did not submit a report from an independent vocational expert at that time, nor did claimant move for an extension of time to procure such a report. On March 30, 2016, the ALJ issued the underlying decision concluding claimant was not disabled.[2] *Id.* at 71-85.

DeMarco requested that the Appeals Council review the ALJ's decision. (R. 11, PageID #: 68.) On May 24, 2016, the Appeals Council granted a request from claimant for additional time to submit any new and material evidence. *Id.* at 64-65. The Appeals Council received additional evidence, which it made part of the record, including the report from vocational consultant Dr. Cohen, dated April 25, 2016, and a brief from counsel dated June 18, 2016. *Id. at* 50. Thereafter, the Appeals Council denied DeMarco's request for review on May 17, 2017, thus rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 45-51.

On June 28, 2017, DeMarco filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. In

---

[2] After the ALJ issued the March 30th decision, the claimant obtained a vocational analysis from an independent vocational expert, Charles Cohen, Ph.D. (R. 11, 377-378.) Dr. Cohen's report, dated April 25, 2016, opined that the VE erred during the hearing when identifying three clerical jobs to which DeMarco's skills could transfer. *Id.* at 378.

addition, DeMarco filed a motion for a "sentence six" remand, based upon new and material evidence.  (R. 12, PageID #: 857; *see generally* 42 U.S.C.A. § 405(g).)  This court denied the motion for remand because DeMarco failed to show that a remand was proper.  (R. 18, PageID #: 959, citing *Sizemore v. Secretary, HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Secretary, HHS*, 804 F.2d 964, 966 (6th Cir. 1986).)


## II.  PERSONAL BACKGROUND INFORMATION

DeMarco was born on November 4, 1953, and was 60 years old on the alleged disability onset date.  (R. 11, PageID #: 98, 250, 282.)  He is considered an advanced age individual, for Social Security purposes.  *See* 20 C.F.R. § 404.1563.  DeMarco has a high school education and is able to communicate in English.  (R. 11, PageID #: 99, 285, 287.)  He had past work as a sales manager, and vice president, regional sales.  (R. 11, PageID #: 132-133.)


## III.  RELEVANT MEDICAL EVIDENCE[3]

Disputed issues will be discussed as they arise in DeMarco's brief alleging error by the ALJ.  As noted earlier, DeMarco applied for DIB benefits on April 22, 2014, alleging disability beginning November 7, 2013.  (R. 11, PageID #: 250-251.)  DeMarco listed the physical or mental conditions that limit his ability to work as:  "Depression, neck injury from an auto accident after diagnosis of depr[ession], knee injury from same accident torn miniscus left knee, knee injury from same accident – no prognosis, shoulder injuries from same accident, hips hurt

---

[3]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

from same accident." (R. 11, PageID #: 286.)  Claimant contests the decision only as to his affective disorders, not as to his physical conditions.

DeMarco had a neurology consultation with Robert Salcedo, M.D., on October 17, 2013, for memory loss and depression.  (R. 11, PageID #: 397.)  DeMarco complained of memory loss, difficulty concentrating, and excessive daytime sleepiness.  *Id.*  Dr. Salcedo scheduled an MRI of the brain and neurobehavioral testing to rule out any underlying structural lesions and to assess DeMarco's cognitive abilities.  *Id.*  Later that month, Dr. Salcedo reported that results of the one-hour testing of claimant's cognitive abilities showed "perfect cognition but profound underlying mood disorder, preventing patient from proper focus, concentration and attention span required to acknowledge, process and store information." *Id.* at 394.  The doctor stated that addressing DeMarco's mood disorder should improve his memory.  *Id.*

On April 24, 2014, DeMarco saw Robert Roerich, M.D., at Southwoods Counseling, for a psychiatric consultation regarding depression.  (R. 11, PageID #: 616.  Dr. Roerich diagnosed claimant with Bipolar I, without psychotic symptoms.  *Id.*  The doctor assessed claimant with moderate symptoms of global functioning.  (R. 13, PageID #: 881, citing record.)

On July 14, 2014, reviewing psychologist Denise Rabold, Ph.D., opined that DeMarco's Affective Disorders resulted in mild restriction of his activities of daily living, along with mild difficulties in maintaining social functioning, and maintaining concentration, persistence or pace. (R. 11, PageID #: 149-150.)

In September 2014, Dr. Roerich completed an undated medical statement, indicating that he had first seen DeMarco on April 24, 2014, and most recently on August 25, 2014.  (R. 11, PageID #: 645-646.)  He diagnosed claimant with Bipolar I, hypomanic.  *Id.* at 645.  Dr. Roerich indicated an onset of November 2013, at which time DeMarco complained about feeling

4

helplessness, suicidal thoughts, insomnia, mind racing, extreme irritability, and that he was easily angered. *Id.* The doctor noted that claimant started feeling slightly better with psychotherapy and medication, although he continued to suffer mood swings, sleep disturbances, racing thoughts and high anxiety. *Id.* at 645-646. The claimant was easily irritated and angered,. *id.* at 645, but Dr. Roerich indicated that DeMarco had been cooperative and compliant with treatment. *Id.* at 646. The doctor identified DeMarco's limitations, which impacted DeMarco's ability to perform sustained work activity, as poor concentration and focus, mood swings and irritability, bad memory, and does not follow directions well. (R. 11, PageID #: 646.)

On October 10, 2014, reviewing psychologist Courtney Zeune, Psy.D., opined on reconsideration that DeMarco's Affective Disorders were non-severe, resulted in no restrictions of his activities of daily living, and mild difficulties in maintaining social functioning and maintaining concentration, persistence or pace. (R. 11, PageID #: 164-165, 182.) Dr. Zeune indicated that DeMarco had completed a neuropsychological evaluation in October 2013, "which evidenced no organic problems with memory, attention, or concentration." *Id.* at 165, 182. Dr. Zeune noted that progress notes had shown claimant's mood symptoms improved with medication, and mental status information was within normal limits. *Id.*

On November 24, 2014, Dr. Roerich completed a Mental Assessment of Ability to do Work-Related Activities. (R. 11, PageID #: 683-685.) Dr. Roerich assessed DeMarco as "fair" in most of the sub-categories within "making occupational adjustments,"[4] and "fair" in the abilities to make "performance adjustments."[5] *Id.* at 683-84. The claimant reported memory

---

[4] These included: dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, and maintaining attention and concentration.

[5] These included: understanding, remembering and carrying out complex, detailed, or simple job instructions.

problems and poor comprehension, and the doctor noted that DeMarco becomes easily distracted, irritable, and easily frustrated.  *Id.*  Dr. Roerich assessed claimant as "fair" in his ability to behave in an emotionally stable manner, and to relate predictably in social situations, commenting that claimant had high anxiety in social settings.  (R. 11, PageID #: 684.)

On August 21, 2015, the doctor completed an updated Mental Assessment of Ability to do Work-Related Activities. (R. 11, PageID #: 686-688.)  Dr. Roerich assessed DeMarco as "poor" in several of the abilities of making occupational adjustments (using judgment, dealing with work stresses, and maintaining attention and concentration), and "fair" in the rest (following work rules, dealing with the public, interacting with supervisors, and functioning independently). *Id.* at 686.  Regarding claimant's abilities to make performance adjustments, the doctor assessed "poor or none" in the ability to understand, remember and carry out complex job instructions, and "fair" in the ability to understand, remember and carry out detailed but not complex job instructions or simple job instructions.  *Id.* at 687.

Dr. Roerich indicated that DeMarco was very scattered and unorganized, and easily distracted.  (R. 11, PageID #: 687.)  Medication had helped, but his limitations were still problematic, and claimant scored high on ADHD self-report and mood disorder assessments.  *Id.* Dr. Roerich assessed little change in claimant's ability to make personal social adjustments.  *Id.* The claimant continued to suffer from anxiety in social settings.  *Id.*

On February 18, 2016, Dr. Roerich completed a third Mental Assessment of Ability to do Work-Related Activities. (R. 11, PageID #: 837-839.)  The doctor assessed DeMarco as "poor" in all of the listed abilities of making occupational adjustments.  *Id.* at 837.  Dr. Roerich noted that DeMarco "had tried to go back to work, could not deal with the stress, could not function independently, [and] had problems relating to co-workers [and] supervision."  *Id.*  DeMarco's

abilities to make performance adjustments were rated "poor or none" in his ability to understand, remember and carry out complex job instructions, as well as carrying out detailed but not complex job instructions, and "fair" in the ability to understand, remember and carry out simple job instructions.  *Id.* at 838.  Dr. Roerich assessed claimant as "poor" in his ability to behave in an emotionally stable manner, and "fair" in his ability to demonstrate reliability and maintain personal appearance.  *Id.*  But the doctor noted that DeMarco's mood swings caused irritability, and he was easily frustrated and anxious.  *Id.*  Dr. Roerich also commented that DeMarco appeared "disheveled, agitated, not stable at times."  *Id.*

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his March 30, 2016, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since November 7, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  obesity, degenerative disc disease of the lumbar and cervical spine and degenerative joint disease of the bilateral knees (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant may occasionally push and/or pull, including the operation of foot controls, with the bilateral lower extremities; the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant may occasionally be exposed to workplace hazards, including unprotected heights, dangerous moving machinery and operation of a motor vehicle.

6.  The claimant is capable of performing past relevant work as a vice president of regional sales/regional sales manager (DOT#189.117-034), having a sedentary exertional level designation and a specific vocational preparation factor of eight. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (20 C.F.R. 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 7, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 11, PageID #: 76, 78, 83, 85.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age,

education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court may examine all the evidence in the record,

regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).  But evidence that was supplied to the Appeals Council after the hearing may not be considered for purposes of determining whether substantial evidence supports the ALJ's decision, because the court's review is confined to evidence that was available to the ALJ.  *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary, HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993). Upon a showing of good cause, new evidence submitted after the ALJ's decision may serve as grounds for remand to permit administrative consideration of any new evidence.[6]  *Cotton*, 2 F.3d at 696.

VII.  ANALYSIS

DeMarco presents the following legal issues for the court's review: 1) the ALJ erred when considering plaintiff's past relevant work; 2) the ALJ failed to consider that because plaintiff was in the age 60 category, there must be a transferability of skills to the same or similar industry with little or no work adjustment; and 3) the ALJ erred by not finding the plaintiff's psychological impairments of Bi-polar I and/or Mood disorder severe impairments.  (R. 13, PageID #: 872.)  The court agrees with DeMarco's first argument, but finds the remaining arguments lack merit, for the reasons set forth below.

---

[6] The court previously considered and denied claimant's motion to remand, as indicated *supra*. (R. 18.)

A.  Composite Job

The claimant argues that the ALJ mischaracterized DeMarco's past relevant work by failing to find it a composite job.  (R. 13, PageID #: 872, 888-891.)  Further, the claimant argues the ALJ used the wrong DOT number in characterizing claimant's job description.  *Id.*

At the fourth step of the sequential analysis, a claimant must prove that he is unable to perform his past relevant work, and that he is unable to return to his former type of work as generally performed.  *Delgado v. Commissioner*, No. 00-4200, 2002 WL 343402, at *5 (6th Cir. Mar. 4, 2002) (citing SSR 82-61; *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 148 (1987); *Studaway v. Sec'y of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987)); *Richardson v. Colvin*, No. 1:16CV01583, 2017 WL 1169702, at *9  (N.D. Ohio Mar. 3, 2017), *adopted by* 2017 WL 1155511 (N.D. Ohio Mar. 28, 2017) (claimant has initial burden).  The general rule is that a claimant is not disabled if he maintains the RFC to perform his past relevant work, either as actually performed, or as it is generally performed in the national economy.  *Comeau v. Commissioner*, No. 15-10650, 2016 WL 1253315, at *9-*10 (E.D. Mich. Mar. 30, 2016) (citing SSR 82-61; 20 C.F.R. § 404.1560(b)(2)); *Hansen v. Commissioner,* No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014).  There are three possible tests for determining whether a claimant retains the ability to perform past relevant work:

> (1) "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job," (2) "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it," or (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."

*Richardson*, 2017 WL 1169702, at *9 (citing SSR 82-61).

However, "[a] finding that the past relevant work is a composite job creates an exception to the rule that the Step Four finding can be supported by the ability to do the job as actually performed or as generally performed in the national economy." *Snell v. Commissioner*, No. 14-13661, 2016 WL 8114213, at *7 (E.D. Mich. Apr. 29, 2016), *adopted by* 2016 WL 3049402 (E.D. Mich. May 31, 2016) (citing SSR 82-61); *see also Geibig v. Commissioner*, No. 16-14290, 2018 WL 1471443, at *8 (E.D. Mich. Mar. 26, 2018). Where a claimant's past relevant work is a "composite job," his ability to return to that unique work situation must be "evaluated according to the particular facts of each individual case." *Comeau*, 2016 WL 1253315, at *9-*10 (quoting SSR 82-61); *see also Hansen*, 2014 WL 5307133, at *8.

A person whose past relevant work is a composite job is only capable of performing that job if he is found capable of performing the skills of each of the individual components of that position. *Geibig*, 2018 WL 1471443, at *8; *Comeau*, 2016 WL 1253315, at *9-*10; *Hansen*, 2014 WL 5307133, at *8. An ALJ "may not deem a claimant capable of performing past relevant work by dividing the demand of a composite job into separate jobs and finding him capable of performing the less demanding of the two jobs." *Hansen*, 2014 WL 5307133, at *8 (citing *Henson v. Colvin*, No. 12-3053, [2014 WL 1154275, at *4 (E.D. La. Mar. 14, 2014)] (collecting cases)). In other words, "the evidence must establish that the individual is capable of doing the former work as actually performed rather than 'as generally performed' in the national economy." *Geibig*, 2018 WL 1471443, at *8.

The initial question before the court in evaluating DeMarco's argument, then, is whether his position was a composite job. *Smith v. Commissioner*, No. 1:14CV920, 2015 WL 5592793, at *3 (W.D. Mich. Sept. 22, 2015). Social Security Ruling 82-61 instructs that "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the

DOT.  Such situations will be evaluated according to the particular facts of each individual case."  SSR 82-61, 1982 WL 31387, at *2; Smith, 2015 WL 5592793, at *3; Hansen, 2014 WL 5307133, at *8; Perry v. Commissioner, No. 3:09CV1847, 2010 WL 7366775, at *4-*5 (N.D. Ohio Sept. 27, 2010).  The mere fact that claimant's former position required multiple tasks, however, does not necessarily render it a "composite job."  Geibig, 2018 WL 1471443, at *8. Moreover, an ALJ may consider whether claimant's RFC enabled him to perform the job as generally performed in the national economy, when the VE provides no indication that the claimant's past work was a "composite job."  Hurley v. Commissioner, No. 1:13CV913, 2015 WL 954192, at *12 (S.D. Ohio Mar. 4, 2015).

DeMarco asserts that "[t]here is no issue as to whether or not the plaintiff had a composite job."  (R. 13, PageID #: 888.)  In fact, the Commissioner contests this issue.  See R. 15, PageID #: 926-929.  Nonetheless, DeMarco contends that the ALJ did not understand "the complex nature of a composite job," evidenced allegedly by the ALJ's determination that, as claimant puts it, "plaintiff could return to a portion of the composite job of Vice President Regional Sales/regional sales manager."  (R. 13, PageID #: 888.)  Two vocational experts, according to DeMarco, agree that he had a composite job.  Id.  The hearing VE, however, never expressly designated claimant's past work as a "composite job," although claimant asserts that VE "testified as to a composite job of Vice President and Display Maker." (R. 13, PageID #: 889, citing R. 11, PageID #: 132.)

During the hearing, the VE testified that DeMarco performed two different jobs "in the same . . . auspice."  (R. 11, PageID #: 132.)  The VE testified that claimant "was a sales manager, but as vice president of sales or regional sales manager, but he also had to build and present exhibits, which would be an exhibit display rep or I think a more accurate one might be display

13

man.  There were two parts of the same job, very different functions, if that makes sense."  *Id.*
The VE testified that "vice president, regional sales," is "an accurate description of the work that
[DeMarco] did as far as the sales activity.  He was also a display maker and that would be DOT
code of 739.361-010."  (R. 11, PageID #: 132.)[7]  After discussion, the ALJ asked the VE if the
VE thought it was "a composite job of all those different things."  *Id.* at 133.  The VE did not
respond directly, but noted that, "typically as performed, they're two different jobs where you
would have a sales manager and probably an assistant that goes to a trade show" to carry and
build the display.  *Id.*  Claimant interjected that it was very common in the food industry to do
both tasks, that is, for the sales manager to set up trade show displays. *Id.*

Although the VE did not expressly state that DeMarco's past relevant work was a
composite job, the VE's testimony above indicates that it was a composite job.  SSR 82-61 states
that "composite jobs have significant elements of two or more occupations and, as such, have no
counterpart in the DOT."  SSR 82-61, 1982 WL 31387, at *2; *Smith*, 2015 WL 5592793, at *3;
*Hansen*, 2014 WL 5307133, at *8; *Perry*, 2010 WL 7366775, at *5.  The VE testified that the
vice president/sales manager position and the display maker position were, in most cases, "two
different jobs."  (R. 11, PageID #: 132-133.)

The ALJ did not determine, at the hearing, that DeMarco's job was a composite job.  (R.
11, PageID #: 133-134.)  He stated:

> I don't have to make a decision this very moment.  I might find that all of that
> together is a composite job, Ms. Hayden [claimant's counsel], in which case then
> he has to be able to perform all of them in order to say that you can do them.  I
> might decide later that the display maker is incidental to this – what I find is his
> more routine job duties.  I don't know.  I have to think about it.

---

[7] The ALJ subsequently identified the DOT number for vice president of regional sales/regional
sales manager as 189.117-034.  (R. 11, PageID #: 83.)

(R. 11, PageID #: 133-134.)  In his March 30, 2016, decision, the ALJ did not state that DeMarco's past relevant work was a composite job, nor did the ALJ address claimant's past relevant work as a display maker.  (R. 11, PageID #: 83; *see* PageID #: 132 (VE testified: "He was also a display maker . . . DOT code of 739.361-010")).)  Rather, the ALJ found that DeMarco was capable of performing his past relevant work as vice president of regional sales/regional sales manager (DOT# 189.117-034).  (R. 11, PageID #: 83.)

The ALJ's decision fails to articulate why DeMarco's past work was not a composite job, as the VE's testimony indicates.  While it is true that the ALJ is not required to use the services of a vocational expert, *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (citing *Varley v. Secretary, HHS*, 820 F.2d 777, 779 (6th Cir. 1987)), this court cannot affirm an ALJ's decision, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'"  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).  Had the ALJ determined that DeMarco's past relevant work was a composite job, it would be reversible error for the ALJ to find that DeMarco could perform his past relevant work upon concluding he could perform only one part of the composite job.  *Hansen*, 2014 WL 5307133, at *8 (citing cases).  Although the ALJ made an alternative finding at Step Five, based on transferability of skills, which is also contested (below), the implicit determination that DeMarco's past work was not a composite job is still germane.  Because substantial evidence does not support the ALJ's determination, the decision should be remanded for a more thorough analysis of this issue.

### B.  Transferability of Skills

DeMarco also contends that the decision should be remanded because:

> [t]he ALJ failed to realize that since plaintiff was in the age 60 category, there must be a transferability of skills to the same or similar industry with little or no work adjustment. If there are no transferability of skills, then plaintiff is found disabled per 20 C.F.R. 1468(d)(4) and Appendix 2 to Subpart P of Part 404.201.00(f), 201.06, 202.00(f) and 202.06. The ALJ is not required to find other jobs in which plaintiff could perform and by doing this he committed an error of law.

(R. 13, PageID #: 872, *see also* 891-893.) The relevant regulation concerning transferability of skills for persons of advanced age provides:

> If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568(d)(4); *see generally Preslar v. Secretary, HHS*, 14 F.3d 1107, 1111-1112 (6th Cir. 1994); *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). It is proper for an ALJ to rely on a vocational expert's testimony when determining the transferability of a claimant's skills and the availability of jobs. *Kyle v. Commissioner*, 609 F.3d 847, 857 (6th Cir. 2010); *Isaac v. Colvin*, No. 3:13CV125, 2014 WL 2931579, at *12 (S.D. Ohio June 27, 2014); *Witty v. Commissioner*, No. 3:11CV662, 2013 WL 1284254, at *5 (N.D. Ohio Mar. 25, 2013) (citing *Kyle*).

Here, the ALJ's decision stated that, although the claimant was capable of performing past relevant work, there are other jobs existing in the national economy that he is able to perform. (R. 11, PageID #: 83-84.) The ALJ based the decision, in part, upon the VE's testimony identifying other jobs—for a person with the claimant's age, education, past relevant work experience, and RFC—that required no additional skills beyond those acquired in the claimant's past relevant work. *Id.* at 84; *see also* PageID #: 136, 139-140. The VE testified that

16

DeMarco's skills were "highly marketable skills that can be used in the entire food industry." *Id.* at 139.

DeMarco contests the VE's assessments of the transferability of his skills. (R. 13, PageID #: 891-893.) The claimant argues that even if it were true that he had transferable skills to the sedentary occupations of scheduler, order clerk, or appointment clerk (*see* R. 11, PageID #: 84, 139-140), claimant is in the age 60 category, "and must have transferable skills to the same or similar industries with little to no vocational adjustment at light work." (R. 13, PageID #: 892.) Although he acknowledges performing some clerical activities as part of his job, DeMarco contends there is no evidence that he had the requisite level of clerical skill to perform a purely clerical job on a competitive basis. *Id.* DeMarco relies, in part, on the post-hearing evidence of his own VE. But that post-hearing evidence, submitted after the ALJ's decision, is not properly before this court, when considering whether the ALJ's decision is supported by substantial evidence. *Matthews*, 239 F.3d at 594; *Cotton*, 2 F.3d at 696 ("court's review is confined to evidence that was available to the ALJ").

The hearing VE testified that DeMarco had transferable skills which would be at the light level within the RFC that the ALJ set forth. (R. 11, PageID #: 139-140.) The VE testified that claimant had "highly marketable skills" that could be used in the food industry, with little vocational adjustment. *Id.* These skills included, interacting with customers to determine product needs, the ability to budget the requirements of trade shows and what would be supplied, the ability to assist in making economic forecasts for the coming year, and the ability to assess the food market to determine the types of products that would be most likely to be used and marketable at trade shows. *Id.* at 139. The ALJ was entitled to rely upon the testimony and

opinions from the vocational expert.  *Kyle*, 609 F.3d at 857; *Isaac*, 2014 WL 2931579, at *12; *Witty*, 2013 WL 1284254, at *5 (citing *Kyle*).

The claimant also contends that the VE confused "skills" with "aptitude."  (R. 16, PageID #: 940.)  The court disagrees.  "An aptitude is an inclination, natural ability, or capacity to learn; a 'skill' is a learned ability to do a specific job."  *Cole v. Secretary, HHS*, 820 F.2d 768, 773 (6th Cir. 1987).  Transferable skills are acquired and relate to specific work activities.  *Burton v. Secretary, HHS*, 893 F.2d 821, 823 (6th Cir. 1990) (quoting 20 C.F.R. § 404.1565(a) ("skills and abilities you have acquired through work which show the type of work you may be expected to do").  The "highly marketable skills" that the VE identified are not aptitudes, but rather skills claimant has acquired.

The ALJ's decision concerning the transferability of skills from DeMarco's past work is supported by substantial evidence, regardless of whether substantial evidence could support an opposite conclusion.  *DeLong*, 748 F.3d at 726; *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

## C.  Psychological Impairments

DeMarco argues that the ALJ erred by not finding his psychological impairments of bipolar disorder and mood disorder to be severe impairments, and thus the decision was not based upon substantial evidence.  (R. 13, PageID #: 893-896.)  The claimant contends that the ALJ incorrectly interpreted the medical evidence, and the VE in turn relied on incorrect mental limitations to assess claimant's ability to work. *Id.* at 894.

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's physical and mental impairments.  *Varley*, 820 F.2d at 779 (citing cases); *see also Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011)

(question must accurately portray claimant's impairments); *Ealy v. Commissioner*, 594 F.3d 504, 516 (6th Cir. 2010) (same).  Hypothetical questions, however, need only incorporate those limitations that the ALJ has accepted as credible.  *Parks*, 2011 WL 867214, at *9 (citing *Casey*, 987 F.2d at 1235).

The ALJ found that DeMarco's "medically determinable mental impairment of an affective disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  (R. 11, PageID #: 76.)  In reaching this conclusion, the ALJ reviewed the medical evidence and considered the "paragraph B" criteria.  *Id.* at 76-77.  The ALJ identified evidence that supported a determination that DeMarco had mild limitation in the first functional area, the claimant's activities of daily living.  *Id.* at 77, citing PageID #: 285, 300-308, 320-327.  Among other activities, the evidence showed that claimant was able to attend to his own personal hygiene and grooming, as well as household chores, lawncare, and household repairs.  *Id.*  He was able to use a computer, manage an e-mail account, drive a car, shop in stores, and manage his own finances and appointments.  *Id.*  The ALJ also noted that he helped provide some care to his disabled sister; and also reads, gardens, watches television, and goes out to dinner for pleasure.  *Id.*

In addition, the ALJ's decision highlighted evidence to support a determination that DeMarco had mild limitation in the second functional area—the claimant's social functioning.  (R. 11, PageID #: 77, citing PageID #: 300-308, 320-327, 617, 724, 728, 744, 754, 762, 776.)  The evidence showed that claimant was able to shop in stores, attend a health club, his local church and local community center with regularity.  *Id.*  His treating sources described him as cooperative, friendly, and very pleasant.  *Id.*

The ALJ determined that DeMarco had mild limitation in the third functional area—the claimant's concentration, persistence or pace—based on statements from treating sources indicating that he exhibited concentration, memory and intellectual function within normal limits.  (R. 11, PageID #: 77, citing PageID #: 618, 745, 765, 767, 775, 777.)  DeMarco was described with "perfect cognition" by an examining neurologist, *id.,* citing PageID #: 394, and with a normal attention span, normal memory function, and normal comprehension, *id.,* citing PageID #: 396.

The fourth functional area concerns episodes of decompensation.  The ALJ noted that there was no evidence in the record, nor any allegation, that claimant had experienced episodes of decompensation over an extended duration.  (R. 11, PageID #: 77.)  The ALJ concluded that, because the claimant's medically determinable mental impairment of an affective disorder causes no more than mild limitation in any of the first three functional areas, and no episodes of decompensation which have been of extended duration, it is nonsevere.  (R. 11, PageID #: 77, citing 20 C.F.R. § 404.1520a(d)(1).)  Although he found the condition to be nonsevere, the ALJ considered evidence of this condition in formulating the RFC.  *Id.*

DeMarco argues that the ALJ took Dr. Salcedo's comment that he had "perfect cognition" out of context, and ignored the doctor's statement that he had a profound mood disorder that prevented him from proper focus, concentration and attention.  (R. 13, PageID #: 894; *see* R. 11, PageID #: 394-395.)  Dr. Salcedo stated that "[n]eurobehavioral testing is normal for cognition but reveals profound mood disorder."  (R. 11, PageID #: 395.)  The doctor indicated that addressing claimant's mood disorder would improve his memory.  *Id.* at 394.  Medication was prescribed, and a follow-up exam with Dr. Salcedo revealed "some

improvement," assessing DeMarco's mental status as normal in the areas of fund of knowledge, attention span, language comprehension, and recent and remote memory.  *Id.* at 396.

In addition, DeMarco asserts that the ALJ failed to address his hearing testimony, which indicated his employment was terminated for difficulties with focus, concentration, and attention; he had severe mood swings, and was argumentative and disruptive at work.  (R. 13, PageID #: 894-895.)  The record indicates that the ALJ took claimant's testimony at the hearing and questioned him about the reasons for his termination.  (R. 11, PageID #: 100.)  The ALJ's decision also reviewed claimant's testimony in preparing his decision.  *Id.* at 81 (discussing testimony of daily activities).  As such, it is apparent that the ALJ took claimant's hearing testimony into consideration.  While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single piece of evidence.  *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004).

The claimant also points to the mental assessments prepared by Dr. Roerich, which found poor or no abilities in various work-related activities.  (R. 13, PageID #: 895; *see generally* R. 11, PageID #: 686-688, 837-839.)  Treating physicians' opinions are only given deference when the ALJ finds they are supported by objective medical evidence.[8] *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).  The ALJ is not bound by a treating physician's opinions, and may reject the treating physician's findings where good reasons to do so are found in the record.

---

[8]  The claimant does not allege that the ALJ violated the treating physician rule.  *See generally Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013).  The analysis of the weight he assigned to Dr. Roerich's opinions is nonetheless relevant in this context.

*Hare v. Commissioner*, No. 01-4228, 2002 WL 1354699, at *2 (6th Cir. June 19, 2002).  Those

good reasons must be supported by evidence in the case record, and must be sufficiently specific

to make clear to subsequent reviewers the weight assigned to the treating physician's opinion,

and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.

Here, the ALJ's decision addressed Dr. Roerich's various opinions of function, while

recognizing that the doctor had treated claimant for a lengthy period and was reporting within the

bounds of his professional certifications and specialties.  (R. 11, PageID #:82-83.)  However, the

ALJ noted that the doctor's "own treatment notes regularly report the claimant to present as

cooperative and friendly, with memory, concentration, and intellectual function within normal

limits."  *Id.* at 83 (citing MER).  Dr. Roerich's opinions, as the ALJ determined, were

inconsistent with other evidence in the record, which indicated claimant had "perfect cognition,"

was "very pleasant," and maintained a wide array of daily activities.  *Id.* (citing record).  The

ALJ determined that Dr. Roerich's opinions were inconsistent with his treatment records and

broader evidence in the record, and concluded "no controlling weight, but rather little weight was

accorded these opinions."  *Id.*  The ALJ's analysis of Dr. Roerich's opinions meets the treating

physician standard.

DeMarco also argues that the ALJ improperly relied on the state agency reviewing

psychologists' opinions when considering his mental condition not severe, because the record

was incomplete, by October 2014, when they rendered their opinions.  (R. 13, PageID #: 895,

citing R. 11, PageID #: 81-82.)  State agency doctors are considered highly-qualified experts in

disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 404.1513a(b)(1);

404.1527(e).  Where the ALJ relies on the opinions of non-examining sources who did not have

access to later medical evidence, the Sixth Circuit requires "some indication" that the ALJ

considered the later information before giving weight to an opinion that is not based on a review of the complete case record. *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, No. 06-4677, 2007 WL 3325869, at *6 (6th Cir. Nov. 9, 2007)). DeMarco contends that the reviewing psychologists did not have access to, for example, changes in his medications which occurred in December 2014, September and October 2015, and January 2016, and "the overall decrease in his mental condition over the years." (R. 13, PageID #: 895.) But it is clear that the ALJ reviewed Dr. Roerich's treatment notes, including those after 2014, and referenced numerous such records in his decision. *See, e.g.,* R. 11, PageID #: 77, 83 (references to "27F/5-6," [cited by claimant as Tr. 701] and 27F generally). Thus, the ALJ properly considered the later information before giving weight to the opinions of the non-examining sources. *Blakley*, 581 F.3d at 409.

The ALJ's determination that DeMarco's psychological impairments of bipolar disorder and mood disorder were not severe impairments is supported by substantial evidence, as set forth above. That determination, therefore, should be affirmed regardless of whether substantial evidence could support an opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.

## VIII.  CONCLUSION

The decision of the ALJ should be remanded.  The determination that DeMarco's past work was not a composite job is not supported by substantial evidence, and the decision should be remanded for a more thorough analysis of this issue.


s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge


Date:  June 21, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).